**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, JUDGE**

Civil Case No.  09-cv-00435-LTB

JAMES N. LANGE, JR.,

       Plaintiff,

v.

MICHAEL MILLER, in his individual capacity,
CRAIG TYER, in his individual capacity,
WAYNE WEYLER, in his individual capacity,

       Defendants.

_____

# ORDER

_____

This police misconduct case is before me on Defendants, Michael Miller, Craig Tyer, and Wayne Weyler's, Rule 12 Motion[] to Dismiss, and Raising the Defense of Qualified Immunity [**Docket # 7**], Plaintiff's Response [**Docket # 12**], and Defendants' Reply [**Docket # 14**].  Oral argument would not materially assist the determination of this motion.  After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT in part and DENY in part Defendants' Motion to Dismiss [**Docket # 7**].

## I.  BACKGROUND

The relevant facts alleged in the Complaint [**Docket # 1**] are as follows.  Plaintiff—at all times relevant to this case—was a resident of Grand Junction, Colorado.  The various Defendants—as well as Defendants named in a separate case brought by the same Plaintiff and captioned *Lange v. Coyne, et al.*, Civil Case No. 08-cv-02049-LTB-MJW—incorrectly believed Plaintiff was a major drug dealer.  Defendants, individually and in collusion with others,

conspired to force Plaintiff to leave the Grand Junction area by means of a series of harassing activities—including besmirching Plaintiff's name and subjecting Plaintiff to unwarranted traffic stops—designed to ruin Plaintiff's local reputation.

Plaintiff filed the present Complaint on February 27, 2009. [**Docket # 1**]. The Complaint alleges three claims for relief: a claim that Defendant Miller deprived, and all Defendants conspired to deprive, Plaintiff of his right to be free from unreasonable searches and seizures ("Claim One"); a claim that the individual Defendants deprived, and all Defendants conspired to deprive, Plaintiff of the protected liberty interests in his reputation secured by the Fourteenth Amendment ("Claim Two"); and a claim that the individual Defendants deprived, and all Defendants conspired to deprive, Plaintiff of his protected liberty interest in living and working where he chooses, also secured by the Fourteenth Amendment ("Claim Three").

The Defendants moved for dismissal of the claims against them for failure to state a claim on which relief may be granted and on grounds of qualified immunity. All claims against Defendants Tyer and Weyler were dismissed with prejudice on June 12, 2009. [**Docket # 13**]. Plaintiff indicated in his response to the present motion that—in light of this Court's findings in the companion case—he "withdraws his Fourteenth Amendment claims against Defendant Miller." Accordingly, Claim Two and Claim Three are dismissed with prejudice under FED. R. CIV. P. 41(a)(2). I address the remaining claim against Defendant Miller below.

## II. STANDARDS OF REVIEW

### A. Failure to State a Claim—FED. R. CIV. P. 12(b)(6)

Granting a motion to dismiss is a harsh remedy which must be exercised with caution to protect the liberal rules of pleading and the interests of justice. *See Cayman Exploration Corp.*

*v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989).  Thus, the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.  *Id*.  Nonetheless, a claim "may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim."  *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, a district court must accept as true all factual allegations in the complaint.  *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  Legal conclusions—while they "can provide the framework of a complaint"—must therefore "be supported by factual allegations."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id* at 1949–50.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft*, 129 S. Ct. at 1950.  If the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the Court should dismiss the claim.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic*, 127 S. Ct. at 1974).  "Plausibility," however,

does not refer to the likelihood that the allegations can be proven or even that the allegations are true. *See id.*

Determining "whether a complaint states a plausible claim" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See Ashcroft*, 129 S. Ct. at 1950. While the factual allegations need not be pleaded in great detail, they must be sufficiently precise to raise a right to relief above the speculative level. *See Bell Atlantic*, 127 S. Ct. at 1964–65, 1969 (abrogating the rule of *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (internal formatting omitted). Accordingly, "within the context of the claim alleged, the complaint must contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed to be true, the plaintiff has a claim for relief." *Knox*, 566 F. Supp. 2d at 1222; *see Bell Atlantic*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

## B.  Qualified Immunity

The doctrine of qualified immunity shields public officials from damages actions unless

4

their conduct was unreasonable in light of clearly established law.  *See Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).  This qualified immunity inquiry requires analysis of two distinct questions: (1) whether—taken in the light most favorable to the plaintiff as the party asserting the injury—the plaintiff alleges sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part by Pearson*, 129 S. Ct. 808.  While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question.  *See Pearson*, 129 S. Ct. at 818.

The determination of whether a right was clearly established within a sufficiently analogous factual setting must be made within the specific context of the case, not as a broad general proposition.  *Saucier*, 533 U.S. at 201; *see also Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina*, 960 F.2d at 1498.  This does not mean the prior case law must have precisely the same facts, however, but rather requires a particularized inquiry to determine whether the contours of the right were sufficiently defined by prior case law such that "a reasonable official would understand what he is doing violates that right."  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. *See Saucier*, 533 U.S. at 201. For purposes of a motion to dismiss based on qualified immunity, therefore, a plaintiff must allege sufficient facts to show he plausibly, not just speculatively, meets both inquiries. *See Robbins*, 519 F.3d at 1247. A plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective allegations against the state." *Id*. at 1249–50 (emphasis in original). Mere conclusory allegations are insufficient. *See id*.

### III. ANALYSIS

As the motion to dismiss is brought by Defendant Miller, I consider only the sufficiency of the allegations against him. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1349 (3d ed. 2004). Plaintiff alleges the following facts against Defendant Miller: Defendant Miller is an officer of the Mesa County Sheriff's Office; Defendant Miller and another officer of the Mesa County Sheriff's Office—former Defendant Tyer—expressed their intent to "chas[e] Jimmy Lange out of town," or words to that effect; officers of the Mesa County Sheriff's Office—not including Defendant Miller—spread rumors that Plaintiff was engaged in drug trafficking and money laundering; unnamed Defendants and other law enforcement officers stopped Plaintiff numerous times between September 2006 and June 2008 for unsubstantiated traffic violations; in June 2008, Defendant Miller and another unnamed officer stopped a vehicle Plaintiff was riding in as a passenger, detained Plaintiff for an excessive amount of time, threatened Plaintiff's father who arrived at the scene, and subjected the vehicle to a canine search all without cause or reason; the dog was known to Defendant Miller to have "hit" on drugs previously when no drugs were actually found; unnamed law

6

enforcement officers followed Plaintiff's vehicle without reason or cause; Defendant Miller sat outside of Plaintiff's home and watched him and also watched Plaintiff while he was moving from his home; and Defendants did not respond to a request by Plaintiff's father to look into these allegations of wrongdoing.

When a plaintiff alleges a conspiracy, he must do more than merely allege the defendants acted similarly—he must also allege the defendants had an agreement to act in the alleged manner. *See Bell Atlantic*, 127 S. Ct. at 1965, 1970; *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). The "agreement" alleged by Plaintiff is Defendant Miller and former Defendant Tyer's announced plan to drive Plaintiff out of town. Plaintiff alleges Defendant Miller acted in furtherance of this agreement by subjecting Plaintiff to unreasonable searches and seizures. This is sufficient to insulate Plaintiff's conspiracy claim from dismissal under Rule 12(b)(6). *See Dunn v. Marrelli*, 3 F. App'x 710, 715 (10th Cir. 2001); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *see also Ashcroft*, 129 S. Ct. at 1949–50; *Bell Atlantic*, 127 S. Ct. at 1964–65, 1970.

Having determined that Plaintiff alleges sufficient facts "to show that if all the alleged facts—and only the alleged facts—are believed to be true" he has a claim for relief against Defendant Miller for conspiracy to deprive him of his right to be free of unreasonable searches and seizures—*see Knox*, 566 F. Supp. 2d at 1222—I now turn to Plaintiff's claim that Defendant Miller actually deprived him of this right. As Defendant Miller raises the defense of qualified immunity, I must make a specific inquiry into the allegations against him to determine whether Plaintiff's complaint "make[s] clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective allegations against the state." *See Robbins*, 519 F.3d at 1249–50

7

(emphasis in original).  Plaintiff's allegations specifically against Defendant Miller include: (1) Defendant Miller pulled over a vehicle owned by Plaintiff, and in which Plaintiff was riding as a passenger, without reasonable suspicion; (2) Defendant Miller detained Plaintiff for an excessive amount of time; and (3) Defendant Miller subjected Plaintiff's car to a dog search without cause.

"It is well-established that an automobile stop is subject to the Fourth Amendment imperative that guarantees the right to be free from unreasonable searches and seizures." *United States v. Broadway*, 580 F. Supp. 2d 1179, 1180 (D. Colo. 2008); *see United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1307 (10th Cir. 2006); *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005).  Analyzing an automobile stop for reasonableness requires application of the two-part inquiry set forth in *Terry v. Ohio*.  *See Bradford*, 423 F.3d at 1156 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).  The *Terry* inquiry requires the Court to first ask whether the stop was justified at its inception.  *See Bradford*, 423 F.3d at 1156.  A stop will be justified at its inception only when the officer has, "based on all the circumstances, a 'particularized and objective basis for suspecting' the person stopped of 'criminal activity.'"  *See United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

If the Court determines the stop was justified initially, it must then inquire whether the scope of the stop was reasonably related to the circumstances which justified interference in the first place.  *See Bradford*, 423 F.3d at 1156.  "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  If, in the process of executing the stop, the officer becomes aware that no criminal activity is actually afoot, "termination of the encounter is required. . . . At this point, the detention is no longer reasonable,

8

as the officer's concerns have proven illusory." *See Winder*, 557 F.3d at 1133 (citing *United States v. Peters*, 10 F.3d 1517, 1522 (10th Cir. 1993)).

The Complaint alleges both that Defendant Miller stopped Plaintiff's vehicle without reasonable suspicion that any violations had taken place and that Defendant Miller detained Plaintiff for an excessive period of time. Assuming—as I must at this stage—that these allegations are true, Defendant Miller's actions were unreasonable under clearly established law. *See Pearson*, 129 S. Ct. at 815; *Winder*, 557 F.3d at 1133; *Guerrero-Espinoza*, 462 F.3d at 1307; *Bradford*, 423 F.3d at 1156.

Similarly, qualified immunity is inappropriate on Plaintiff's claim that Defendant Miller subjected Plaintiff's vehicle to a dog search without cause. Although the use of a narcotics dog during the course of a lawful traffic stop does not implicate privacy interests under the Fourth Amendment—*see Broadway*, 580 F. Supp. 2d at 1188 (discussing cases)—the stop at issue here is alleged to be unlawful. A dog search of a vehicle that is conducted while the vehicle is being unlawfully detained implicates the Fourth Amendment in the same manner as any other search conducted in conjunction with any other improper seizure. *See Caballes*, 543 U.S. at 408. Moreover, even if the initial stop was justified, it is well-established that a dog search may not be employed if the dog search extends "beyond the measure of time required for the officer to complete . . . the purpose for which" the vehicle was initially detained. *See United States v. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990). Assuming—as I must at this stage—that the stop was unjustified at its inception and was prolonged for an excessive amount of time in order to effectuate the dog search, Defendant Miller's actions in initiating the dog search were unreasonable under clearly established law. While Plaintiff will eventually bear the burden to

proffer evidence supporting his allegations, dismissal on qualified immunity grounds is inappropriate at this time.

## IV.  CONCLUSION

Accordingly, Defendant Miller's Motion to Dismiss [**Docket # 7**] is GRANTED in part and DENIED in part as follows:

1.       Claim Two (Deprivation of Liberty Interest in Reputation) and Claim Three (Deprivation of Liberty Interest in Living and Working in the Place of Plaintiff's Choosing) against Defendant Miller are DISMISSED WITH PREJUDICE;

2.       Defendant Miller's Motion is otherwise DENIED.


Dated: June   _25_, 2009.

                                        BY THE COURT:


                                        __s/Lewis T. Babcock_____
                                        Lewis T. Babcock, Judge